[Cite as *State v. Cashin*, 2017-Ohio-9289.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 17AP-338 |
| v. | : | (C.P.C. No. 08CR-3899) |
| Christopher E. Cashin, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on December 28, 2017

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Steven L. Taylor*, for appellee. **Argued:** *Steven L. Taylor*.

**On brief:** *The Law Office of Eric J. Allen, Ltd.*, and *Eric J. Allen*, for appellant. **Argued:** *Eric J. Allen*.

APPEAL from the Franklin County Court of Common Pleas

KLATT, J.

{¶ 1} Defendant-appellant, Christopher E. Cashin, appeals a judgment of the Franklin County Court of Common Pleas that denied his motion for leave to file a delayed motion for a new trial. For the following reasons, we affirm that judgment.

{¶ 2} On February 27, 2009, a jury found Cashin guilty of one count of kidnapping, one count of rape, two counts of gross sexual imposition, and one count of felonious assault. The trial court sentenced Cashin to 25 years to life imprisonment.

{¶ 3} Cashin was convicted for sexually abusing P.B., who was then ten years old, on the night of April 19 and 20, 2008. On that night, P.B. slept at the home of his

maternal uncle, Joseph Midlick.  Cashin and Midlick were good friends, and Cashin also stayed overnight at Midlick's home on April 19 and 20, 2008.  While P.B. was sleeping in the basement, Cashin came downstairs.  Cashin removed his clothes and P.B.'s clothes, and Cashin touched and licked P.B.'s "private."  (Tr. at 39-40.)  Cashin also forced P.B. to touch Cashin's "private."  (Tr. at 41.)

{¶ 4}    The next day, P.B. told his mother, T.B., what had happened.  T.B. called the Columbus Police Department.  A Columbus police officer spoke with P.B. about the incident, and P.B. was taken to Nationwide Children's Hospital for an examination.  During that examination, a nurse took a swab from P.B.'s neck because P.B. had told her that Cashin had licked him there.  The swab tested positive for the presence of saliva.  The major donor to the sample matched P.B.'s DNA, and the minor donor matched Cashin's DNA.

{¶ 5}    After Cashin was convicted, he appealed the judgment against him to this court.  We affirmed that judgment.  *See State v. Cashin*, 10th Dist. No. 09AP-367, 2009-Ohio-6419.

{¶ 6}    On July 19, 2016, Cashin filed two motions before the trial court: a motion for leave to file a delayed motion for a new trial and a motion for a new trial.  In his motions, Cashin contended that he had recently discovered evidence that warranted a new trial.  Cashin's newly discovered evidence consisted of the affidavit testimony of three different witnesses.

{¶ 7}    In the first affidavit, John Midlick, the brother of T.B. and Joseph Midlick, testified that T.B. is controlling, homophobic, obsessed with money, a thief, and a habitual liar.  John Midlick also stated that T.B. has falsely accused him and his brothers, James and Jeff Midlick, of physically and/or sexually abusing P.B.  According to John Midlick, T.B. would allege abuse against anyone who threatened her inheritance of Joseph Midlick's estate.  Finally, John Midlick represented that P.B. would do anything to please T.B., including making false allegations against someone his mother perceived as a threat.

{¶ 8}    In the second affidavit, Jeff Midlick, the brother of T.B., Joseph Midlick, and John Midlick, testified that T.B. had falsely alleged in a probate court proceeding that their mother, Helen Midlick, had abused P.B.  Like his brother, Jeff Midlick also stated that (1) T.B. had falsely accused P.B.'s uncles, including him, of physically and/or sexually

abusing P.B.; (2) T.B. would level accusations of abuse of P.B. against anyone who threatened her inheritance of Joseph Midlick's estate; and (3) P.B. would do anything to make his mother happy, including making false abuse allegations. Additionally, according to Jeff Midlick, two weeks before P.B. accused Cashin of sexually abusing him, T.B. overheard Cashin tell Joseph Midlick that he was crazy to put T.B.'s name on the deed to his house.

{¶ 9} In the third affidavit, Debra Mullen, a friend of T.B. and an acquaintance of Cashin, testified that T.B. is controlling, homophobic, obsessed with money, and a habitual liar. Mullen also stated that P.B. would do anything to make his mother happy, including making false accusations against someone T.B. perceived as a threat.

{¶ 10} In addition to the three witnesses' affidavits, Cashin submitted his own affidavit to the trial court. Cashin stated that he "had no idea" that T.B. had falsely accused John, Jeff, James, and Helen Midlick of abusing P.B. (Cashin Aff. at ¶ 6-8.) Cashin's affidavit also included the following averments:

> 13. Affiant states that he has done everything possible to procure this information since his conviction in 2009.
>
> 14. Affiant states that the affiants were unwilling to testify on his behalf and have been unwilling since 2009.

(Cashin Aff. at ¶ 13-14.)

{¶ 11} In a judgment issued April 10, 2017, the trial court denied Cashin's motion for leave to file a delayed motion for a new trial. The trial court found that Cashin was not unavoidably prevented from discovering the evidence in the three witnesses' affidavits within the 120-day period provided by Crim.R. 33(B) to file a motion for a new trial based on newly discovered evidence. The trial court's denial of Cashin's motion for leave rendered moot the motion for a new trial, so the trial court did not rule on it.

{¶ 12} Cashin now appeals the trial court's judgment, and he assigns the following error:

> THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT OVERRULED APPELLANT'S MOTION FOR LEAVE TO FILE A MOTION FOR A NEW TRIAL.

{¶ 13} Preliminarily, we must address the state's argument that we should review the judgment before us as a denial of a postconviction petition instead of a denial of a motion for leave to file a delayed motion for a new trial. The state essentially contends that the General Assembly tacitly abolished Crim.R. 33 when it established the postconviction petition as the exclusive means by which a person may collaterally attack the validity of a conviction. *See* R.C. 2953.21(K). We reject this argument. This court has repeatedly stated that the Crim.R. 33 procedures for a new trial exist independently from the R.C. 2953.21 procedure for postconviction relief. *See State v. Boone*, 10th Dist. No. 16AP-387, 2017-Ohio-843, ¶ 5, fn. 1; *State v. Caulley*, 10th Dist. No. 12AP-100, 2012-Ohio-2649, ¶ 18; *State v. Berry*, 10th Dist. No. 06AP-803, 2007-Ohio-2244, ¶ 5, fn.1; *State v. Burke*, 10th Dist. No. 06AP-656, 2006-Ohio-4597, ¶ 10; *State v. Lee*, 10th Dist. No. 05AP-229, 2005-Ohio-6374, ¶ 13.

{¶ 14} We now turn to the merits of Cashin's argument that the trial court erred in denying his motion for leave to file a delayed motion for a new trial. Pursuant to Crim.R. 33(A)(6), a court may grant a motion for a new trial "[w]hen new evidence material to the defense is discovered, which the defendant could not with reasonable diligence have discovered and produced at the trial." A defendant must file a motion based on Crim.R. 33(A)(6) within 120 days after the date on which a verdict or decision was rendered against him. Crim.R. 33(B). However,

> [i]f it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely, such motion shall be filed within seven days from an order of the court finding that he was unavoidably prevented from discovering the evidence within the one hundred twenty day period.

*Id.*

{¶ 15} Thus, where a defendant misses filing within the 120-day period, Crim.R. 33 mandates a two-step procedure. *State v. Graggs*, 10th Dist. No. 16AP-611, 2017-Ohio-4454, ¶ 13; *State v. Noor*, 10th Dist. No. 16AP-340, 2016-Ohio-7756, ¶ 11. First, the defendant must file a motion for leave to file a delayed motion for new trial. The defendant must support his motion with evidence that he was unavoidably prevented from learning of the newly discovered evidence within the 120-day period for filing a Crim.R. 33(A)(6) motion. *Graggs* at ¶ 13; *Noor* at ¶ 11. Second, if the trial court grants

the motion for leave, the defendant must file his actual motion for a new trial. *Noor* at ¶ 11. In that motion, the defendant must show that the new evidence:

> "(1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence."

*State v. Hawkins*, 66 Ohio St.3d 339, 350 (1993), quoting *State v. Petro*, 148 Ohio St. 505 (1947), syllabus.

{¶ 16} A defendant is unavoidably prevented from filing a motion for a new trial if he "had no knowledge of the existence of the ground supporting the motion for new trial and could not have learned of the existence of that ground within the time prescribed for filing the motion for new trial in the exercise of reasonable diligence." *State v. Walden*, 19 Ohio App.3d 141, 146 (10th Dist.1984). Given the defendant's obligation to exercise reasonable diligence, the defendant cannot claim that evidence was undiscoverable simply because no one made efforts to obtain the evidence sooner. *Graggs* at ¶ 15; *Noor* at ¶ 17; *State v. Anderson*, 10th Dist. No. 12AP-133, 2012-Ohio-4733, ¶ 14. In other words, a defendant cannot demonstrate that he was unavoidably prevented from discovering new evidence when he could have discovered that evidence earlier had he exercised reasonable diligence and effort. *State v. Lenoir*, 2d Dist. No. 26846, 2016-Ohio-4981, ¶ 24.

{¶ 17} To allow the trial court to gauge the defendant's diligence, the defendant must describe all investigative actions undertaken within the 120-day period for timely filing a Crim.R. 33(A)(6) motion and explain why he was unavoidably prevented from discovering the evidence before the 120-day period elapsed. *State v. Whiteside*, 10th Dist. No. 15AP-55, 2015-Ohio-3490, ¶ 19; *State v. Ambartsoumov*, 10th Dist. No. 12AP-878, 2013-Ohio-3011, ¶ 25; *State v. Golden*, 10th Dist. No. 09AP-1004, 2010-Ohio-4438, ¶ 19; *State v. West*, 10th Dist. No. 09AP-474, 2009-Ohio-5203, ¶ 13; *State v. Bush*, 10th Dist. No. 08AP-627, 2009-Ohio-441, ¶ 10-11. Mere conclusory allegations do not prove that the defendant was unavoidably prevented from discovering the evidence he seeks to introduce as support for a new trial. *Noor* at ¶ 17; *State v. Waddy*, 10th Dist. No. 15AP-397, 2016-Ohio-4911, ¶ 19; *Anderson* at ¶ 14; *West* at ¶ 12.

{¶ 18} Trial courts apply the clear-and-convincing-evidence standard to determine whether a defendant was unavoidably prevented from discovering the evidence on which he seeks a new trial.  Civ.R. 33(B).  Clear and convincing evidence is " 'that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' "  *State v. Schiebel*, 55 Ohio St.3d 71, 74 (1990), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶ 19} Appellate courts apply an abuse-of-discretion standard in reviewing a trial court's denial of a motion for leave to file a delayed motion for a new trial.  *Anderson* at ¶ 9.  An abuse of discretion is more than an error of law or judgment; it implies that a trial court's decision was unreasonable, arbitrary, or unconscionable.  *State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, ¶ 91.  An appellate court may not determine that a trial court abused its discretion simply because the appellate court might not have reached the same conclusion.  *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, ¶ 14.

{¶ 20}   Here, a jury found Cashin guilty on February 27, 2009.  Cashin sought a new trial based on newly discovered evidence over seven years later, on July 19, 2016.  Cashin, therefore, clearly missed the 120-day deadline.  Consequently, to secure court review of his motion for a new trial, Cashin had to establish that he was unavoidably prevented from discovering the evidence contained in the affidavits of John Midlick, Jeff Midlick, and Mullen.  To accomplish this, Cashin testified in his affidavit that he did not know about the false abuse allegations that T.B. had leveled against her family members.  Additionally, Cashin stated that he did "everything possible" to procure the witnesses' testimony, but the witnesses have been unwilling to provide their testimony since 2009.  (Cashin Aff. at ¶ 13-14.)

{¶ 21} Cashin's statement that he did everything possible to obtain the witnesses' testimony is a conclusory allegation devoid of the detail needed to determine whether Cashin exercised reasonable diligence.  Without a description of the actions undertaken to obtain the witnesses' testimony, a court cannot determine whether it agrees with Cashin's own assessment of his efforts.  Thus, Cashin's statement that he did everything possible does not prove that Cashin acted with reasonable diligence.

{¶ 22} A court could potentially interpret Cashin's statement that the witnesses were unwilling to provide affidavit testimony as an explanation for why Cashin was unavoidably prevented from discovering the evidence contained in the affidavits within the 120-day period after the jury verdict. However, Cashin failed to produce any evidence regarding his efforts to obtain the witnesses' affidavits. Without that evidence, Cashin cannot establish that he exercised reasonable diligence to overcome the witnesses' unwillingness before the 120-day period lapsed. Cashin's testimony, therefore, does not constitute clear and convincing evidence of unavoidable prevention.

{¶ 23} Because Cashin failed to prove that he was unavoidably prevented from discovering the evidence he relies upon as a basis for his motion for a new trial, the trial court did not err in denying his motion for leave. Accordingly, we overrule Cashin's sole assignment of error, and we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DORRIAN and HORTON, JJ., concur.

_____