[Cite as *State v. Phillips*, 2017-Ohio-8004.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 17AP-21 |
| v. | : | (C.P.C. No. 12CR-3644) |
| Malcolm Phillips, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

---

## D E C I S I O N

### Rendered on September 29, 2017

---

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Michael P. Walton*, for appellee. **Argued:** *Michael P. Walton*.

**On brief:** *Kura, Wilford & Schregardus Co., L.P.A.*, and *Sarah M. Schregardus*, for appellant. **Argued:** *Sarah M. Schregardus*.

---

APPEAL from the Franklin County Court of Common Pleas

KLATT, J.

{¶ 1} Defendant-appellant, Malcolm Phillips, appeals from a judgment of the Franklin County Court of Common Pleas denying his motion for leave to file a motion for new trial. For the following reasons, we affirm that judgment.

### I. Factual and Procedural Background

{¶ 2} In 2012, a Franklin County Grand Jury indicted appellant with one count of cocaine possession, with a firearm specification, in violation of R.C. 2925.11, and one count of having a weapon while under disability in violation of R.C. 2923.13. A jury found appellant guilty of both counts and the trial court sentenced him accordingly. This court

affirmed appellant's convictions and sentence.  *State v. Phillips*, 10th Dist. No. 14AP-79, 2014-Ohio-5162.

{¶ 3}   On February 24, 2016, the Franklin County Prosecutor's Office sent a letter to appellant's counsel.  In that letter, the prosecutor wrote that one of the state's witnesses at appellant's trial, Tye Downard, who at the time was a detective with the Reynoldsburg Police Department ("RPD"), had been arrested by the Federal Bureau of Investigations and charged in federal court with possession with intent to distribute drugs.  Downard's alleged conduct occurred between October 2015 and February 2016.  Downard killed himself in jail days after his arrest.  In light of that development, appellant filed a motion for leave to file a motion for new trial based on newly discovered evidence, arguing in part that Downard's testimony was no longer credible.  The state opposed appellant's motion, arguing that Downard's alleged criminal conduct was not material to appellant's defense and that Downard played a very minimal role in appellant's case.

{¶ 4}   Shortly after filing his motion, appellant supplemented the motion with evidence that another RPD officer involved in appellant's case, Sergeant Shane Mauger, had agreed to plead guilty in federal court to counts of conspiracy to deprive persons of civil rights and federal program theft.  The convictions were based upon Mauger's conspiracy with others to steal money and property that he obtained from the execution of search warrants or other police actions.  Appellant also alleged that Mauger had filed search warrant affidavits that contained false statements.  Again, appellant challenged the credibility of Mauger's testimony during appellant's trial based upon Mauger's convictions.  In its response, the state emphasized the minimal role that Mauger played in appellant's case.

{¶ 5}   The trial court denied appellant's motion for leave to file a motion for a new trial.  The trial court concluded that the evidence of Downard's and Mauger's criminal conduct was not material to appellant's defense because the case against him was "overwhelmingly" handled by the Whitehall Police Department ("WPD").  Although the trial court noted Downard's and Mauger's "small role" in the beginning of the case, it concluded that the evidence against appellant was obtained by the WPD and not by the RPD.  The trial court also noted that appellant's defense at trial did not involve the

credibility of either of these witnesses. Rather, his defense was based on his assertion that the drugs and weapon found by the police were not his.[1]

## II. Appellant's Appeal

{¶ 6} Appellant appeals and assigns the following error:

> The trial court abused its discretion when it denied Appellant's Motion for Leave to File a Motion for New Trial.

### A. The Motion for Leave to file a Motion for a New Trial

{¶ 7} Appellant filed his motion for new trial pursuant to Crim.R. 33(A)(6), which provides that a new trial may be granted "[w]hen new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial." Because appellant did not file his motion for a new trial based on newly discovered evidence within 120 days of the jury's verdict, he correctly sought leave from the trial court to file a delayed motion. *State v. Hoover-Moore*, 10th Dist. No. 14AP-1049, 2015-Ohio-4863, ¶ 13, citing *State v. Berry*, 10th Dist. No. 06AP-803, 2007-Ohio-2244, ¶ 19.

{¶ 8} To obtain such leave, a defendant must demonstrate by clear and convincing proof that he or she was unavoidably prevented from discovering the evidence within the 120 days. A party is "unavoidably prevented" from filing a motion for new trial if the party had no knowledge of the existence of the ground supporting the motion and could not have learned of that existence within the time prescribed for filing the motion in the exercise of reasonable diligence. *Id.*, citing *State v. Lee*, 10th Dist. No. 05AP-229, 2005-Ohio-6374, ¶ 7, and *State v. Walden*, 19 Ohio App.3d 141, 145-46 (10th Dist.1984). In addition to the requirement that a defendant show he or she was unavoidably prevented from discovering the evidence relied upon to support a motion for new trial, a defendant also must show that he filed his motion for leave within a reasonable time after discovering the evidence relied upon to support the motion for new trial. *State v. Grinnell*, 10th Dist. No. 09AP-1048, 2010-Ohio-3028, ¶ 12, quoting *State v. Gray*, 8th Dist. No. 92646, 2010-Ohio-11, ¶ 18; *Berry* at ¶ 37. In the event there has been an undue delay between the time that the evidence was discovered and the filing of the motion for new trial, the trial court must determine whether the delay was reasonable

---

[1] This court rejected that argument in appellant's appeal from his convictions. *Phillips* at ¶ 115-22.

under the circumstances or whether the defendant has adequately explained the reason for the delay. *Grinnell.*

{¶ 9} The state conceded, and the trial court agreed, that appellant was unavoidably prevented from discovering the evidence of the officers' illegal misconduct. Thus, the trial court went on to address the merits of his motion for a new trial.

**B. The Motion for New Trial based on Newly Discovered Evidence**

{¶ 10} In order to grant a motion for a new trial based on newly discovered evidence, it must be shown that the newly discovered evidence upon which the motion is based: (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence. *State v. Burke*, 10th Dist. No. 06AP-656, 2006-Ohio-4597, ¶ 13, citing *State v. Davis*, 10th Dist. No. 03AP-1200, 2004-Ohio-6065, ¶ 7; *State v. Petro*, 148 Ohio St. 505 (1947), paragraph one of the syllabus. Our review of a trial court's decision resolving a motion for new trial is limited to determining whether the trial court abused its discretion. *Hoover-Moore* at ¶ 16, citing *State v. Chavis-Tucker*, 10th Dist. No. 14AP-40, 2014-Ohio-3050, ¶ 5. It is also within the discretion of the trial court to determine whether a motion for a new trial and the material submitted with the motion warrants an evidentiary hearing. *State v. Graggs*, 10th Dist. No. 15AP-480, 2015-Ohio-3990, ¶ 9, citing *State v. Hill*, 64 Ohio St.3d 313, 333 (1992). Although an abuse of discretion is typically defined as an unreasonable, arbitrary, or unconscionable decision, no court has the authority, within its discretion, to commit an error of law. *State v. Moncrief*, 10th Dist. No. 13AP-391, 2013-Ohio-4571, ¶ 7.

{¶ 11} In denying appellant's motion, the trial court concluded that the evidence of the officers' illegal conduct was not material to appellant's defense. To review that conclusion, we must consider the involvement of these officers in appellant's case and at his trial.

**C. The Officers' Involvement in this Case**

{¶ 12} Mauger and Downard were the first witnesses to testify at appellant's trial. It was their initial investigation of possible drug sales that caused law enforcement

officers to suspect that appellant was engaged in criminal conduct. Mauger testified that on January 25, 2012, he received an anonymous tip about possible drug sales being conducted at a house located at 5903 Little Brook Way. The next day, he went to the house and obtained vehicle registration information for two cars parked in front of the house. One of the cars was registered to appellant. A day later, Mauger went to the address and performed a "trash pull" in which he searched the house's trash for evidence of drugs. He found several small baggies connected to what he thought was electrical tape. Mauger testified these items were consistent with large scale quantities of drugs. (Tr. 341). He also conducted a field test of white residue he found that tested positive for drugs. As a result of this investigation, Mauger prepared an affidavit for a search warrant of the house and vehicles at the address for narcotics and other evidence of drug trafficking. *Id.* at 334.

{¶ 13} A magistrate approved the search warrant and, on January 31, 2012, the RPD entered the house to execute the warrant. Appellant and two others were inside the house. Mauger searched the car outside the house that was registered to appellant and found a digital scale and some plastic baggies. *Id.* at 351. The scale contained a trace amount of cocaine. Downard testified that he assisted Mauger in the investigation of the initial tip and was present for the execution of the search warrant at the house. He testified that he searched the house and found a large amount of money, bullets, and a baggie with cocaine residue inside. Despite this evidence, RPD did not proceed with any further investigation of appellant and did not file charges against him. Nor was the evidence discovered in the RPD's search of 5903 Little Brook Way the basis for the charges that lead to appellant's convictions.

{¶ 14} On February 2, 2012, the WPD stopped a vehicle for a license plate violation. Appellant was a passenger in the vehicle. The WPD officer called a canine unit to the car and the dog alerted to the presence of drugs on the passenger side of the car. The officer searched the car and found marijuana on the passenger side floor and cocaine in the backseat. The officer also found a business card for a storage facility with a specific unit number written on it. Appellant was arrested but was released shortly thereafter.

{¶ 15} The following day, the WPD brought a canine unit to the storage facility indicated on the business card. The dog alerted to the possibility of drugs at the specific unit written on the business card. Apparently, appellant rented the storage unit on

February 1, 2012, the day after the RPD's search of 5903 Little Brook Way. After the dog alerted, the WPD requested a search warrant for this storage unit. Detective Chad Wilder of the WPD called Downard and asked him to assist him in securing the storage unit while they waited on the search warrant. Wilder called Downard because Wilder was aware of RPD's earlier search at 5903 Little Brook Way and he also wanted to let Downard know that the WPD had arrested appellant the night before. Downard testified that upon receiving Wilder's call, he met Wilder at the storage facility. They were both in plain clothes and in unmarked cars.

{¶ 16} Thereafter, a car approached their location but then disappeared from the officers' sight. The same car approached their location again and then stopped. From the license plate, Wilder identified the vehicle as the same vehicle the WPD had stopped the previous evening for the license plate violation. Downard also thought that the vehicle was the same vehicle he found parked outside the house at 5903 Little Brook Way approximately one week earlier.

{¶ 17} As Wilder approached the car, it sped away. Wilder and Downard pursued the car and stopped it. Three people were in the car, including appellant. Wilder searched the car and found marijuana, a digital scale, and keys to the storage unit. Shortly thereafter, another officer from WPD arrived at the storage unit with a search warrant. Wilder opened the storage unit and found cocaine, guns, and a large amount of money. This evidence formed the basis for the charges against appellant. Downard was not involved in the search of the storage unit. Largely based on the evidence obtained in the storage unit, appellant was convicted of cocaine possession, with firearm specification, and having a weapon under disability.

{¶ 18} The record reflects that Mauger and Downard did not have a significant role in the case against appellant. Mauger's only involvement in this matter, with some assistance from Downard, was to obtain the initial warrant to search 5903 Little Brook Way. That search, however, did not lead to any charges and the RPD did not proceed with any additional investigation of appellant. It appears the state presented Mauger's testimony about the search of 5903 Little Brook Way to prove appellant's motivation for renting the storage unit. However, Mauger's testimony did not directly involve the discovery of the evidence on which appellant's convictions were based.

{¶ 19} Downard was slightly more involved, but only because Wilder asked him to come to the storage unit to assist him in securing the scene. As a result, Downard testified about his observations and conduct at the storage facility. Wilder's testimony confirmed Downard's involvement. Downard had nothing to do with the WPD's traffic stop of the vehicle the previous evening in which appellant was a passenger or the discovery of evidence that lead to the identification of the storage facility and the storage unit. Nor did Downard have anything to do with the WPD's (1) subsequent investigation, including the use of a canine at the storage facility; (2) obtaining a search warrant; or (3) the actual search of the particular unit that resulted in the discovery of the evidence on which appellant's convictions are based.

{¶ 20} In light of the minor role that both Mauger and Downard played in this matter, the trial court did not abuse its discretion when it found that the evidence of their criminal conduct, and its impact on the credibility of their testimony, would not be material to appellant's case. Nor does the new evidence disclose a strong probability that it would change the result if a new trial were granted. *State v. Jackson*, 10th Dist. No. 16AP-728, 2017-Ohio-6971, ¶ 8 (holding that new DNA evidence that slightly modified DNA evidence presented at trial did not disclose a strong probability of a new result because original DNA evidence "did not play a significant role in appellant's convictions."). As noted by the trial court, neither Mauger's nor Downard's testimony was material to appellant's defense. The trial court did not act unreasonably or arbitrarily when it found that appellant did not satisfy the *Petro* requirements for granting of a new trial based on newly discovered evidence. Accordingly, the trial court did not err by denying appellant's motion for a new trial without a hearing. We overrule appellant's assignment of error.

## III. Conclusion

{¶ 21} Having overruled appellant's assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

SADLER, J., concurs.
DORRIAN, J., dissents.

DORRIAN, J., dissenting.

{¶ 22} Because I disagree with the majority proceeding to opine on the trial court's decision regarding the merits of the question whether appellant is entitled to a new trial pursuant to Crim.R. 33(A)(6), I respectfully dissent.

{¶ 23} Crim.R. 33(B) states:

> **(B) Motion for new trial; form, time.** Application for a new trial shall be made by motion which, *except for the cause of newly discovered evidence*, shall be filed within fourteen days after the verdict was rendered, or the decision of the court where a trial by jury has been waived, *unless it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from filing his motion for a new trial*, in which case the motion shall be filed within seven days from the order of the court finding that the defendant was unavoidably prevented from filing such motion within the time provided herein.

(Emphasis added.)

{¶ 24} Here, the trial court noted the state agreed that appellant was unable to discover the information regarding Downard and Mauger, and the court concluded that appellant "clearly could ***not*** have discovered and produced the evidence submitted in this Motion during his trial." (Emphasis sic.) (Jgmt. Entry at 2.) The court then proceeded to consider whether the evidence discovered regarding Downard and Mauger is actually material to the case and the merits of whether appellant is entitled to a new trial pursuant to Crim.R. 33(A)(6).

{¶ 25} Recently this court cautioned against conflating the two distinct issues of the merits of whether appellant is entitled to a new trial rather than addressing the threshold issue of whether appellant was unavoidably prevented from discovering new evidence. *State v. Brodbeck*, 10th Dist. No. 17AP-61, 2017-Ohio-7187, ¶ 17. Nevertheless, this court has found in certain cases it may be proper for a trial court to consider the merits of whether an appellant is entitled to a new trial when only a motion for leave to file a motion for new trial is pending before it. *Id.* We have also found, however, there are cases where it is improper. *See State v. Gaven*, 10th Dist. No. 16AP-645, 2017-Ohio-5524, ¶ 20 ("the trial court's analysis improperly 'conflates two distinct issues' by resolving the motion for leave based on the merits of whether appellant is entitled to a new trial rather than addressing the threshold issue of whether appellant was unavoidably prevented from

discovering new evidence. * * * Moreover, the trial court's stated basis for denying the motion is grounded in the incorrect legal assumption * * *. Considering the above, we find that the trial court's application of incorrect law in considering appellant's motion for leave to file a delayed motion for new trial constitutes reversible error").

{¶ 26} On the facts of the case before us, given the seriousness of the newly discovered evidence as well as the role Downard and Mauger played in the investigation leading to appellant being charged and tried for possession of cocaine and having a weapon while under disability, I would find it was improper to consider the merits of whether appellant is entitled to a new trial and that it was an abuse of discretion to deny appellant's motion for leave to file a motion for new trial.

{¶ 27} Finally, I disagree with the characterization by the majority of Downard's and Mauger's role in this case as "minor" and "[not] significant." (Majority Decision at ¶ 18 and 20.) As the majority notes, "[i]t was their initial investigation [by Downard and Mauger] of possible drug sales that caused law enforcement officers to suspect that appellant was engaged in criminal conduct." (Majority Decision at ¶ 12.) Mauger and Downard obtained and executed the search warrant of appellant's residence prior to the search of the storage unit. (Majority Decision at ¶ 13.) The record reflects that in his affidavit to establish probable cause to secure the search warrant for the storage unit, Whitehall Detective Grinstead included information regarding Downard's and Mauger's search of appellant's residence:

> On 1/31/12 at 7:10pm Reynoldsburg P.D. along with Columbus P.D. executed a narcotic search warrant at Malcolm Phillips residence located * * * in Columbus. Malcolm Phillips was present at this location. During a search of the residence officers located over $5,000.00 in cash and a small amount of powder cocaine. Also recovered as a result of the investigation was a set of digital scales with cocaine residue. See Reynoldsburg P.D. police report #01-12-000691 for complete details.

(State's Memo. Contra Mot. to Suppress, Ex. 4 at 5.)

{¶ 28} Furthermore, Downard assisted Whitehall Police Department in securing the storage unit prior to the search. Finally, both Downard and Mauger testified at trial. Taking all this into consideration, I would find the involvement of Downard and Mauger

in the investigation and ultimately in this case to be significant enough to warrant granting leave to file a motion for new trial.

{¶ 29} Therefore, I would sustain appellant's assignment of error, reverse the judgment of the Franklin County Court of Common Pleas and remand to that court with instructions to grant the motion for leave to file a motion for new trial.

———————————